IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br><br> v. <br><br> STANLEY ANYANWU, <br>     Defendant. | No. 2:24-cr-20211-SHL-atc-1 |

## RESTITUTION ORDER

On April 17, 2025, a jury convicted Stanley Anyanwu for participating as a money mule in a conspiracy to defraud the City of Memphis and several private individuals through a business email compromise scheme and romance scams. When an identifiable victim suffers a pecuniary loss resulting from offenses against property committed by fraud, the Mandatory Victim Restitution Act requires the Court to award restitution. 18 U.S.C. § 3663A(c)(1)(A)(ii), (c)(1)(B). The Court must "order restitution to each victim in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A).

Anyanwu's Presentence Investigation Report ("PSR") reflects the amount of pecuniary losses suffered by the City of Memphis, Robert Kopecky, Catherina Ingenito, Lynda Engel, and Amalia Rogers. (ECF No. 117-1 at PageID 799–803 (sealed).) Anyanwu[1] does not object to the actual loss calculation for the City of Memphis, which amounts to $773,695.45. (ECF No. 119 at PageID 856.) But he objects to the PSR's loss calculations for Kopecky, Ingenito, and Engel (id.), and he argues that he should not be ordered to pay restitution to Rogers because her losses

---

[1] This order generally refers to Stanley Anyanwu by his last name. To avoid confusion, all references to co-defendant Vitalis Anyanwu will include his full name.

were solely caused by Vitalis Anyanwu (id.; ECF No. 100 at PageID 664–65). The Government asserts that Stanley Anyanwu should be held jointly and severally responsible for paying restitution to Rogers and that the victim impact statements support an order of restitution in the full amount requested by each victim as reflected in the PSR. (See ECF No. 116 at PageID 772.)

Because Anyanwu directly participated in a conspiracy to defraud Kopecky, Ingenito, and Engel, he is responsible in restitution for the full amount of their losses as outlined in the PSR. But there is not sufficient proof in the record to support a finding that Anyanwu directly caused any of Rogers's losses. Thus, Rogers is not an identifiable victim of a scheme in which Anyanwu participated.

## ANALYSIS

The concept of "loss" under the Guidelines serves a different purpose than restitution under the MVRA. United States v. Bailey, 973 F.3d 548, 576 (6th Cir. 2020). Restitution is designed to "make the victims whole," while the Guidelines "serve a punitive purpose." Id. (quoting United States v. Gossi, 608 F.3d 574, 581 (9th Cir. 2010)). Thus, a court may find "an amount of loss that reflects only conduct closely related to the defendant" and simultaneously "order an amount of restitution that reflects the loss caused by the entire conspiracy." Id.

The restitution determination is informed by different considerations—unlike with the loss amount, a court may rely on "conspiracy principles to determine a defendant's amount of restitution." Id. In the conspiracy context, "a defendant is liable in restitution to all the victims of the reasonably foreseeable acts of his co-conspirators." United States v. Bogart, 576 F.3d 565, 576 (6th Cir. 2009) (quoting United States v. Collins, 209 F.3d 1, 3 (1st Cir. 1999)). The victims of a conspiracy offense include "any person directly harmed by the defendant's criminal conduct in the course of the [] conspiracy." 18 U.S.C. § 3663A(a)(2). The Sixth Circuit has consistently

2

"rejected a defendant's argument that he should not be held responsible for restitution in a conspiracy case because 'his particular actions did not cause the victims' losses.'" Bailey, 973 F.3d at 576 (quoting Bogart, 576 F.3d at 576). "That a defendant played a minor role in a conspiracy and warrants a lesser punishment" under the Guidelines "does not change the amount of loss sustained by the conspiracy's victims," which is recoverable in restitution. Id.

Because the purpose of restitution is to make a victim whole, restitution "must be based on the victim's loss rather than the offender's gain." United States v. Kilpatrick, 798 F.3d 365, 388 (6th Cir. 2015) (quoting United States v. George, 403 F.3d 470, 474 (7th Cir. 2005)). Indeed, a defendant's gain is not an appropriate measure of the victim's actual loss unless the government establishes a "direct correlation" between the two. Id. at 390 (quoting United States v. Zangari, 677 F.3d 86, 93 (2d Cir. 2012)). Moreover, when multiple defendants are responsible for a victim's loss, the court may "make multiple defendants jointly responsible for payment of restitution or to apportion to each defendant" his own share. Bailey, 973 F.3d at 576 (citing 18 U.S.C. § 3664(h)). The decision as to whether to "apply joint and several liability or whether liability should be apportioned among the defendants based on their economic circumstances and their respective contributions to the victims' losses" is entirely discretionary. Bogart, 576 F.3d at 575 (quoting United States v. Hunt, 521 F.3d 636, 649 (6th Cir. 2008)). But a court may only order a defendant to pay restitution for "losses caused by the conduct underlying the offense of conviction." Kilpatrick, 798 F.3d at 388 (quoting Hughey v. United States, 495 U.S. 411, 416 (1990)).

In seeking restitution for victims, the Government must prove by a preponderance of the evidence that actual losses to a victim were directly and proximately caused by the offense of conviction. 18 U.S.C. § 3664(e). "Although the MVRA does not require courts to calculate

3

restitution with exact precision, some precision is required—'speculation and rough justice are not permitted.'" Kilpatrick, 798 F.3d at 388 (quoting United States v. Ferdman, 779 F.3d 1129, 1133 (10th Cir. 2015)) (cleaned up). The "information underlying an award must have 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Sawyer, 825 F.3d 287, 294–95 (6th Cir. 2016) (quoting United States v. Jackson-Randolph, 282 F.3d 369, 386 (6th Cir. 2002)).

For example, "summary accounting tables" are "insufficient standing alone to support a restitution award." Id. at 296 (citing United States v. Waknine, 543 F.3d 546, 557 (9th Cir. 2008)). But a court does not abuse its discretion in awarding restitution based on credible testimony about reports that substantiate the costs detailed in those reports. Id. "All that is required in the restitution context is a 'modicum of reliable evidence.'" United States v. Davis, Nos. 13–44–GFVT, 14–23–GFVT, 2015 WL 2154245, at *3 (E.D. Ky. May 7, 2015) (quoting United States v. Lopez, 503 F. App'x 147, 149 (3d Cir. 2012)); see, e.g., United States v. Hamad, 300 F. App'x 401, 408 (6th Cir. 2008) (holding that the district court did not abuse its discretion in awarding restitution based on a letter from the victim and his subsequent statement in court); Lopez, 503 F. App'x at 149 (holding that an unsworn letter from a victim was sufficient to support a restitution award where there was an "absence of credible countervailing evidence").

The MVRA supports a finding of restitution in reliance on a PSR—it even requires a district court to "order the probation officer to obtain and include in its presentence report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order." Lopez, 503 F. App'x at 150 (quoting 18 U.S.C. § 3664(a)). This report must include "a complete accounting of the losses to each victim," and the probation officer is required to "inform the court" if "circumstances exist that make this requirement clearly impracticable." 18 U.S.C.

4

3664(a). If a victim wishes to provide a statement detailing her losses, the probation officer is required to provide her with the affidavit form. 18 U.S.C. § 3664(d)(2)(A)(vi), (d)(2)(B). These affidavits are deemed credible because they are submitted under penalty of perjury, and "the author is subject to criminal liability for 'any materially false, fictitious, or fraudulent statement or representation' contained within it." Lopez, 503 F. App'x at 150 (quoting 18 U.S.C. § 1001(a)); see also Davis, 2015 WL 2154245, at *3 (holding that "the victim's affidavit—a signed declaration made under penalty of perjury that detailed the amounts of loss and explained how each figure was arrived at—bears sufficient indicia of reliability and demonstrates the amount of loss by a preponderance of the evidence").

Here, the evidence at trial and the sworn victim impact statements submitted by Kopecky, Ingenito, and Engel support an award of restitution in the amount of their losses as reflected in the PSR. Anyanwu directly participated in a scheme to defraud these victims, and he must therefore make them whole in restitution. But there is little proof that Anyanwu directly harmed Rogers, as discussed below.

**I.     Restitution to Kopecky, Ingenito, and Engel**

Anyanwu generally objects to the PSR's inclusion of Kopecky's loss in the amount of $370,000; Ingenito's loss in the amount of $475,000; and Engel's loss in the amount of $500,000. (ECF No. 119 at PageID 855; see ECF No. 117-1 at PageID 799–802 (sealed).) However, general objections to a victim's calculated losses without any evidence to directly contract the victim's statement are insufficient to challenge the reliability of the statement. Davis, 2015 WL 2154245, at *3 ("Though Defendant Irvin objects generally, he has offered no evidence directly contradicting the victim's stated amounts. Accordingly, restitution for this item will be imposed in the amount requested by the Government.").

5

In his objection, Anyanwu appears to argue that he should only be responsible for paying restitution for the specific pecuniary losses that cycled through his own accounts. For example, he asserts that he should only be required to pay $30,250 in restitution to Kopecky, which is the exact amount that Kopecky states that he sent to Stanley's business, Best Way World Services. (See ECF No. 117-1 at PageID 799 (sealed).) Similarly, he argues that he should only be required to pay $36,000 in restitution to Ingenito because that is the amount that she states she sent to Stanley World Services, not including the $50,000 transfer cancelled by the bank. (See ECF No. 117 at PageID 780 (sealed).) And he asserts that he should not be required to pay any amount of restitution to Engel because the bank cancelled her $35,000 transfer to his account. (ECF No. 119 at PageID 856; see also ECF No. 117 at PageID 787 (sealed).)

However, Anyanwu's argument is premised on the idea that he should only be responsible in restitution for his particular gains, an argument consistently rejected by the Sixth Circuit. See, e.g., Bogart, 576 F.3d at 576 (rejecting the defendant's argument that he should not be held responsible for the restitution payment just because "his particular actions [in the course of the conspiracy] did not cause the victims' losses"). Because Anyanwu was convicted of conspiracy, he is required to pay restitution for losses suffered by victims within the scope of the charged conspiracy, regardless of whether he played a limited role in effecting those losses. See Bailey, 973 F.3d at 576 (recognizing that the court may "order an amount of restitution that reflects the loss caused by the entire conspiracy," even if those losses were not closely related to the defendant's particular conduct).

Anyanwu's argument that he should not be responsible in restitution for wire transfers that were cancelled is similarly misplaced. There is no evidence in the PSR—and Stanley presented none at sentencing—that Ingenito and Engel included those cancelled payments in the

6

calculation of their losses. Indeed, at trial, Ingenito testified that she transferred $475,000 from her Wells Fargo account (ECF No. 117 at PageID 781 (sealed)), and Engel testified that she transferred more than $500,000 out of her account (id. at PageID 787). Both victims confirmed these loss amounts again in their sworn victim impact affidavits, provided under penalty of perjury. (ECF No. 117-1 at PageID 800–02 (sealed).) Without any evidence to undermine the credibility of their statements, given twice under oath, their testimony is sufficiently reliable to support their requested award.

Thus, there is sufficient evidence in the record to order Anyanwu to pay restitution to Kopecky in the amount of $370,000, to Engel in the amount of $500,000, and to Ingenito in the amount of $475,000, as reflected in the PSR.

## II.  Restitution to Rogers

The Government also seeks restitution from Anyanwu for Rogers's losses in the amount of $313,000, jointly and severally with Vitalis Anyanwu. (ECF No. 116 at PageID 771–72.) Rogers transferred approximately $172,500 to Vitalis Anyanwu as part of a romance scam, and she ultimately suffered a $313,000 loss because of the overall scheme to defraud. (ECF No. 117 at PageID 781–82 (sealed).) Anyanwu requests that he not be ordered to pay restitution to Rogers because he has no connection to her, none of her losses were sustained during the course of the particular conspiracy in which he was involved, and, without any direct proof that he conspired with his brother, he should not be held jointly and severally liable for losses caused by Vitalis Anyanwu's conspiracy. (See ECF No. 100 at PageID 664–65.)

It is within the Court's discretion to find Anyanwu jointly and severally responsible in restitution to Rogers for losses caused by Vitalis Anyanwu, if there is sufficient proof that both Defendants participated in the conspiracy to defraud her. See 18 U.S.C. § 3664(h) (stating that

7

the Court may only "make each defendant liable for payment of the full amount of restitution" if it "finds that more than [one] defendant has contributed to the loss of a victim"); see also 18 U.S.C. § 3663A(a)(2) (clarifying that a victim entitled to restitution is someone who has been "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern [of criminal activity]"). But the Government's circumstantial evidence that Stanley Anyanwu conspired with his brother is thin—indeed, the Government primarily relies on the fact that they are brothers. (ECF No. 116 at PageID 765–67.) They have been together since they were both born in Nigeria, they moved to the United States together, they both live in Austin, they both work as nurses, and they both participated in the same scheme in the same manner as to the other victims. (Id.) They received warning letters from the FBI on the same day, and they both continued to defraud innocent people despite knowing what they were doing. (Id. at PageID 766.) They defrauded three of the same victims, including the City of Memphis, Ingenito, and Engel. (Id. at PageID 767.)

While the Government is correct that there is some evidence that Stanley Anyanwu conspired with his brother, this circumstantial evidence is insufficient to support a finding that it is more likely than not that Stanley Anyanwu's conduct directly harmed Rogers, who never transferred any money to his accounts.[2] Thus, the Court declines to order Stanley Anyanwu to pay restitution to Rogers, jointly and severally with his brother.

---

[2] Even if there were sufficient evidence to support this finding, the Court would still have discretion to apportion the losses among Defendants based on their respective contribution to Rogers's ultimate loss amount. Because Rogers never transferred or attempted to transfer funds to Stanley Anyanwu, he did not directly contribute to her loss and thus the Court declines to apportion any responsibility for her losses to him.

## CONCLUSION

Anyanwu does not object to the PSR's calculation of the City of Memphis's actual losses. Thus, he is **ORDERED** to pay restitution to the City of Memphis in the amount of **$773,695.45**. There is also sufficient evidence to support a finding that Anyanwu's conduct in the course of the conspiracy directly harmed Kopecky, Engel, and Ingenito, and all three witnesses submitted unrebutted declarations confirming their actual loss amounts under penalty of perjury, as reflected in the PSR. Thus, Anyanwu is **ORDERED** to pay restitution to Kopecky in the amount of **$370,000**; to Engel in the amount of **$500,000**; and to Ingenito in the amount of **$475,000**. But Stanley is not required to pay restitution to Rogers because the Government has not presented sufficient evidence to show that it is more likely than not that Anyanwu directly caused Rogers to suffer a loss in the course of his conspiracy to defraud.

**IT IS SO ORDERED,** this 21st day of August, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE